# In the United States Court of Federal Claims

No. 24-496
(Filed: October 9, 2026)

```
***********************************
JOSHUA STUTZMAN,                  *
                                  *
                  Plaintiff,      *
                                  *
      v.                          *
                                  *
THE UNITED STATES,                *
                                  *
                  Defendant.      *
***********************************
```

*Christopher Nuneviller*, MNB Meridian Law Ltd., Philadelphia, PA, counsel for Plaintiff.

*Elinor J. Kim*, United States Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Major Adam F. Bradley*, United States Army Legal Services Agency, Fort Belvoir, VA, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Joshua Stutzman, a former second lieutenant in the United States Army, claims he was wrongfully retained as a second lieutenant due to numerous arbitrary and capricious administrative decisions. He seeks reinstatement to active-duty status, promotion, correction of his military records, and compensation. Before the Court are Mr. Stutzman's motion for judgment on the administrative record ("MJAR") and the government's combined motion to dismiss and cross-MJAR. For the reasons set forth below, the Court **DENIES** Mr. Stutzman's MJAR [ECF 10], **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion to dismiss, [ECF 13], and **DENIES** the government's cross-MJAR [ECF 13].

## I. BACKGROUND

Mr. Stutzman served 21 years in the United States Army. Compl. [ECF 1] ¶ 7; AR 1578.[1] He began his service as an enlisted soldier in 2001. [ECF 1] ¶ 15; AR 935-36. After being promoted to Sergeant First Class in 2011, he accepted a commission to the United States Army Reserve Medical Corps Service in 2013 as a Second Lieutenant. [ECF 1] ¶ 15; AR 1193, 1203, 1205-06. In January 2014, the Army sent Mr. Stutzman to Fort Sam Houston, Texas, to attend the Medical Service Corps Basic Officer Leader Course. [ECF 1] ¶ 16; AR 223. In March 2014, several fellow officers accused Mr. Stutzman of sexual assault. [ECF 1] ¶ 22; AR 116. On April 11, 2014, following an investigation by the Army's Criminal Investigation Division ("CID"), the

[1] "AR __" refers to the bate-stamped page of the Administrative Record filed on August 2, 2024, at [ECF 7].

Army issued Mr. Stutzman a General Officer Memorandum of Reprimand ("GOMOR") for "sexual harassment and conduct unbecoming an Officer." [ECF 1] ¶ 24; AR 180. The Army told Mr. Stutzman that the GOMOR might be permanently placed in his Army Military Human Resource Records ("AMHRR") but that he could, within seven days, submit a response to the Army for consideration. AR 180. Mr. Stutzman acknowledged his receipt of the GOMOR and submitted seven character references, five witness statements, and a letter asking that the reprimand be either suspended or placed in his local personnel file. AR 181, 184-86. On June 3, 2014, the Army placed the GOMOR in Mr. Stutzman's AMHRR. AR 227.

During his Army service, Mr. Stutzman was considered for promotion to First Lieutenant on three occasions—in 2015, 2018, and 2021. [ECF 1] ¶¶ 28, 41, 49. Each time the Army's Promotion Review Board ("PRB") reviewed Mr. Stutzman's record, it recommended that he not be promoted, and the Secretary of the Army removed Mr. Stutzman from the promotion scrolls. AR 71, 77, 200. On June 9, 2017, between the first and second time he was considered for promotion to First Lieutenant, an administrative separation ("ADSEP") board met to consider whether Mr. Stutzman should be permanently separated from the Army Reserve for moral or professional dereliction. AR 47. After considering Mr. Stutzman's GOMOR, the CID investigation, and the testimony from Mr. Stutzman, his wife, and seven military witnesses, the board found: "[T]he allegation that on 11 April 2014, Major General Stephen Jones issued 2LT Joshua Stutzman a [GOMOR] that was filed permanently in his [AMHRR] *is* supported by a preponderance of the evidence." *Id.* The board nevertheless recommended that Mr. Stutzman be retained. *Id.*

On July 31, 2018, Mr. Stutzman asked the Department of the Army Suitability Evaluation Board ("DASEB") to either remove the GOMOR from his AMHRR, "or alternatively place[] [it] in the restricted portion of his [AMHRR]." AR 555. He argued that the GOMOR was "supported by [a] faulty investigation . . . [and that it had] served its intended purpose[.]" *Id.* On March 26, 2019, a three-member panel of the DASEB, AR 545, "determined the overall merits of this case do not warrant removal or transfer" of the GOMOR, AR 546. Further, the panel "directed [that] the decision memorandum [] be filed in [Mr. Stutzman's] AMHRR, and [that] the appeal documentation [] be filed in the restricted section of [his] AMHRR." *Id.* On April 1, 2019, the DASEB memorialized its decision "to deny removal or transfer of GOMOR, dated 11 April 2014." AR 544.

On December 24, 2021, Mr. Stutzman applied to the Army Board for Correction of Military Records ("ABCMR"). AR 19. Mr. Stutzman (1) appealed the DASEB's April 2019 denial of his request to remove the GOMOR from his AMHRR; (2) requested that, upon removal of the GOMOR from his AMHRR, the Army "determine an appropriate date when he was first eligible for promotion, and [] direct that his service record be submitted to a Special Selection Board [('SSB')] to determine his date of promotion to First Lieutenant, Captain, and if qualified, Major in the Army Reserve;" and (3) requested "that he be granted time in grade from [the date he was first eligible for promotion], and backpay commensurate with his promotion." [ECF 1] ¶ 54; *accord* AR 20. On June 8, 2023, a three-member ABCMR unanimously denied Mr. Stutzman's application.[2] AR 5-18. It reasoned as follows:

[2] The ABCMR is a civilian corrections board created under the authority of 10 U.S.C. § 1552(a)(1). *See* [ECF 13-1]

> After reviewing the application and all supporting documents, the Board determined that relief was not warranted. The applicant's contentions, the military record, counsel's petition, and regulatory guidance were carefully considered. Based upon the documentary evidence presented by the applicant and found within the military service record, the Board found insufficient evidence of an error or injustice which would warrant a correction of the applicant's record. The Board noted CID provided a thorough and comprehensive investigation of the applicant's misconduct. After reviewing the facts and circumstances, the Board found that all due process protections were afforded the applicant and that the processing of the GOMOR was done within regulatory guidelines and standards. For that reason, the Board recommended that denying the requested relief was appropriate, to include consideration for promotion and associated benefits.

AR 14. On June 12, 2023, the Secretary of the Army approved the ABCMR's denial of Mr. Stutzman's application for correction of his military records, AR 4, and on June 15, 2023, the Army notified Mr. Stutzman of the ABCMR's decision, AR 1-2.

On March 16, 2023, prior to the ABCMR's decision, the Army issued Mr. Stutzman retirement orders. AR 1580. Effective April 14, 2023, the orders provided that his retirement as a second lieutenant was mandatory. *Id.* These orders were amended on July 5, 2023, AR 1579, and again on August 9, 2023, AR 1578.

Mr. Stutzman filed the instant case on April 2, 2024. [ECF 1]. Mr. Stutzman claims that "[t]his lawsuit is about a Soldier who did nothing wrong but was punished by the Army for an incompetently executed investigation of sexual misconduct." *Id.* ¶ 4. He seeks an order from the Court directing the Army to (1) reinstate him in the active Army Reserves, (2) promote him to First Lieutenant as of November 2014, (3) promote him to Captain as of June 2016, (4) promote him to Major as of the date he became eligible, (5) award him the back pay, benefits, and entitlements due for each promotion, (6) transfer "his Post 9/11 G.I. Bill benefits to members of his family," (7) consider him for any "awards and personal decorations" he was not previously considered for, and (8) "remove the [GOMOR] and any adverse information related to [its] imposition . . . from [his] official military personnel file." *Id.* ¶ 66. Mr. Stutzman also seeks attorney's fees under the Equal Access to Justice Act. *Id.* ¶ 64.

On October 31, 2024, Mr. Stutzman filed his MJAR. Pl.'s MJAR [ECF 10]. On January 15, 2025, the government filed a combined motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") and cross-MJAR. Def.'s Mot. to Dismiss & Cross-MJAR [ECF 13]. The motions are fully briefed, and oral argument was held on March 12, 2026. *See* [ECF 20].

---

at 75-79 (Army Reg. 15-185 (2006)).

## II. LEGAL STANDARDS

When considering a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the court accepts as true a complaint's well-pleaded factual allegations and construes them in the manner most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Additionally, the court draws all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Dismissal "for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

A motion to dismiss a claim as nonjusticiable under RCFC 12(b)(6) challenges a court's competency to decide a controversy. *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995). In other words, "[w]here a claim is nonjusticiable, the appropriate action is for a court to dismiss the claim for failure to state a claim upon which relief can be granted." *Antonellis v. United States*, 106 Fed. Cl. 112, 115 (2012) (citation omitted), *aff'd*, 723 F.3d 1328 (Fed. Cir. 2013). "A controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (citation and internal quotation marks omitted). "Justiciability . . . depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'" *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)). "Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy[.]" *Adkins*, 68 F.3d at 1322 (citation omitted).

"Justiciability is a particularly apt inquiry when one seeks review of military activities." *Murphy*, 993 F.2d at 872. This is because "judges are not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953). The "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province[,] and . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (footnotes omitted); *accord Adkins*, 68 F.3d at 1322 ("The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review."). However, "although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy." *Adkins*, 68 F.3d at 1323. Even in areas wholly within its discretion, the military "is nevertheless bound to follow its own procedural regulations if it chooses to implement some." *Murphy*, 993 F.2d at 873 (citation omitted). A challenge to a procedural matter is therefore within the court's competence because "[t]he court is not called upon to exercise any discretion reserved for the military, it merely

determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Id.*

When considering an MJAR pursuant to RCFC 52.1, the court "is required to make factual findings . . . as if it were conducting a trial on the record." *Acevedo v. United States*, 216 F. App'x 977, 979 (Fed. Cir. 2007) (citation omitted). The inquiry before the court is whether the decision-making body, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014) (citations omitted); *accord Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021) (noting that RCFC 52.1(c)(1) limits the court's inquiry to "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record") (quoting *XOtech, LLC v. United States*, 950 F.3d 1376, 1379 (Fed. Cir. 2020)).

"[I]t has become well established that judicial review of decisions of military correction boards is conducted under the [Administrative Procedure Act ('APA')]." *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) (citations omitted). Under this standard of review, the court must determine whether the board's decision is "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (internal quotation marks omitted). A decision is arbitrary and capricious when the "decision-maker 'entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Kelly v. United States*, 69 F.4th 887, 894-95 (Fed. Cir. 2023) (alterations in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Although many formulations of the arbitrary and capricious standard of review exist, when the standard is applied to military pay cases . . . the court is largely concerned with whether the correction board's decision is procedurally fair and supported by substantial evidence." *Keller v. United States*, 113 Fed. Cl. 779, 786-87 (2013) (citing *Heisig,* 719 F.2d at 1156 & n.12), *aff'd*, 565 F. App'x 873 (Fed. Cir. 2014). A decision meets the substantial evidence standard if a reasonable person could consider the evidence sufficient or adequate to support the conclusion. *Reinhard v. United States*, 171 Fed. Cl. 418, 442-43 (2024) (citing *Verbeck v. United States*, 97 Fed. Cl. 443, 451 (2011)). The plaintiff bears the burden of proving, "by cogent and clearly convincing evidence that the Board's decision was arbitrary, capricious or unlawful." *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973); *accord Pearl v. United States*, 111 Fed. Cl. 301, 310-11 (2013) (stating that the plaintiff's burden in seeking review of the military's action "is a large one" that must be met with "'cogent and clearly convincing evidence'") (citation omitted).

"Generally, 'military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs.'" *Williams*, 116 Fed. Cl. at 158 (quoting *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993)). This "presumption of regularity supports official acts of public officers[, and] [i]n the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir.

2001) (citations and internal quotation marks omitted). The court does not act as a "super correction board." *Van Cleave v. United States*, 70 Fed. Cl. 674, 678 (2006) (internal quotation marks omitted) (quoting *Skinner v. United States*, 219 Ct. Cl. 322, 327 (1979)). Thus, when a military board "examine[s] all the relevant facts in the record and explain[s] its conclusions, . . . [even if] 'reasonable minds could reach differing conclusions on the same evidence' the court must uphold [its] decision." *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010) (citations omitted), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011).

## III. DISCUSSION

Mr. Stutzman challenges the Army's decision to impose the GOMOR, the DASEB's decision not to remove the GOMOR, the Army's decision to remove him from the promotion scrolls, the Army's decision to retire him, and the Army's handling of the administrative flags in his personnel records. Additionally, Mr. Stutzman argues that the Army failed to produce a complete administrative record in this case. For the reasons stated below, the Court grants the government's motion to dismiss as to Mr. Stutzman's claims challenging the Army's decision to impose the GOMOR, the DASEB's decision not to remove the GOMOR, the Army's decision to remove him from the promotion scrolls, and the Army's decision to retire him. Additionally, the Court denies the government's motion to dismiss as to Mr. Stutzman's claim challenging the Army's handling of the administrative flags in his record and remands the case to the ABCMR for further development of the administrative record and consideration of this issue.

### A. The Army's Decision to Impose the GOMOR

Mr. Stutzman contends that the GOMOR was based on an "incorrect" Army CID investigation. [ECF 10] at 23. He also contends that "Major General Jones's administrative decision was a check-the-box perfunctory decision that was arbitrary and capricious, unsupported by substantial evidence, and/or contrary to the Army's statutes and regulations." *Id.* The government argues that "Mr. Stutzman fails to challenge any procedural violation related to the GOMOR itself." [ECF 13] at 29. According to the government, Mr. Stutzman's arguments related to the GOMOR "instead go to the merits of the reprimand and filing decision, which are not justiciable." *Id.* at 30. At oral argument, Mr. Stutzman conceded that he was not challenging the Army's decision to impose the GOMOR either substantively or procedurally. Oral Arg. at 10:35:03 - 10:35:54.[3] Therefore, the Court grants the government's motion to dismiss this claim.

### B. The DASEB's Decision Not to Remove the GOMOR

Mr. Stutzman states that, under Army Regulation ("Army Reg.") 600-37 "[t]he DASEB is charged [with] determin[ing] whether the removal of the unfavorable information is 'in the best interests of the Army[.]'" [ECF 10] at 23. Mr. Stutzman further states that the DASEB must "identify all available relevant information when choosing Soldiers for positions of leadership, trust and responsibility . . . [and] provide a means for correcting injustices when they occur[.]" *Id.* (internal quotation marks omitted). According to Mr. Stutzman, "[t]he DASEB did not identify, review, or discuss" the relevant information when making its determination. *Id.* at 24.

[3] The Court cites the timestamp for the Electronic Digital Recording ("EDR") for the March 12, 2026, oral argument.

Further, Mr. Stutzman asserts that, while "[t]he DASEB identified that [he] had no other derogatory information in his record, was an exemplary officer, and that he had received an award and completed schooling since the GOMOR issuance[,] [which are] [a]ll criteria [] which allowed for the removal of the GOMOR to his restricted OMPF," *id.* at 26, "the DASEB failed to use the metrics provided in [Army Reg.] 600-37 para. 6-3b(5)" when it denied his petition, Pl.'s Resp. [ECF 14] at 20.

The government argues that the DASEB's decision to deny Mr. Stutzman's request to remove or transfer his GOMOR to a restricted section of his personnel record "is not a matter properly subject to judicial review," [ECF 13] at 43, because "[c]ourts are not suited to make determinations regarding what serves the best interests of the military or its personnel management processes," *id.* Additionally, the government argues that the DASEB's decision was "grounded on substantial evidence, rationally explained, and consistent with applicable regulations," *id.* at 44, and that "Mr. Stutzman fail[ed] to provide clear and convincing evidence to overcome the presumption of regularity or to demonstrate that modifying his record was necessary to correct an error or injustice," *id.* According to the government, Army Reg. 600-37, ¶ 6.3b(5) "does not state that transfer of the GOMOR is automatic if the applicant," Def.'s Reply [ECF 15] at 14, meets certain criteria; instead, the government contends that "the plain language of the regulation . . . underscores the discretionary nature of the decision," *id.* at 13-14.

Although Mr. Stutzman references Army Reg. 600-37, he fails to identify any "objective tests or standards that the Court can administer within its competence." *Driscoll v. United States*, 158 Fed. Cl. 399, 409, *supplemented on denial of recons.*, No. 19-1640, 2022 WL 3330432 (Fed. Cl. Aug. 11, 2022). Army Reg. 600-37 "sets forth policies and procedures to ensure the best interests of both the Army and Soldiers are served by authorizing unfavorable information to be placed in, transferred within, or removed from an individual's [AMHRR]." Army Reg. 600-37, ¶ 1-1 (2018).[4] Paragraph 6.3b(5) states that "[t]he DASEB *will consider* appeals for the transfer of unfavorable information to the restricted portion of the AMHRR when the recipient has submitted proof that *the intended purpose has been served and the transfer is in the best interest of the Army*." *Id.* ¶ 6.3b(5) (emphasis added). It further lists certain required, recommended, and optional criteria to be included in a request for consideration, such as a showing of the "[t]ime elapsed since the filing," a showing of "remorse for the actions which caused the unfavorable information to be filed," a showing of the receipt of "[a]t least one positive evaluation report," a showing that "[t]here is no evidence or indication of a repeat of the offense," a showing of a "[m]emorandum from the original imposing authority supporting the transfer," and a showing of a "[m]emorandum of support from the current chain of command and the chain of command at the time of imposition." *Id.* Additionally, the regulation requires that the DASEB "document its findings and conclusions, and [] state its recommendations in their record of proceedings." *Id.* ¶ 6-3b(8).

"The Court can hardly conceive of a discretionary matter less appropriate for judicial review than determining [whether the intended purpose of unfavorable information has been served and] what is 'in the Army's best interests.'" *Driscoll*, 158 Fed. Cl. at 409; *accord Voge*,

[4] The 2018 version of the regulation was enacted on May 10, 2018, and therefore was in effect when the DASEB issued its decision on March 26, 2019.

844 F.2d at 780 (recognizing that there are "thousands of [] routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with") (citations omitted). In its March 26, 2019, decision, the DASEB concluded as follows:

> The evidence presented does not provide substantial evidence that the document in question *has served its intended purpose* or is untrue or unjust, and that its transfer or removal would be *in the best interest of the Army*. Therefore, by unanimous vote, the [DASEB] determined the overall merits of the case do not warrant removal or transfer of the [GOMOR].

AR 546 (emphasis added). This decision was reached after the DASEB considered Mr. Stutzman's statements and the relevant evidence. *See* AR 547-54. Mr. Stutzman's attempts to frame his challenge to the DASEB as procedural error—instead of dissatisfaction with the DASEB's decision on the merits—are unavailing. Therefore, the Court grants the government's motion to dismiss this claim.

**C. The Army's Decision to Remove Mr. Stutzman from the Promotion Scrolls**

Mr. Stutzman contends that "[w]ith regard to the FY15, FY18 and FY21 [promotion review boards], Defendant provided no justification for its decision." [ECF 10] at 28. He also contends that the Secretaries lacked the authority to remove him from the scrolls under Army Reg. 135-155. *Id.* at 29. The government argues that "neither the complaint nor Mr. Stutzman's opening brief allege[s] an actual procedural error in Mr. Stutzman's removal from promotion scrolls." [ECF 13] at 31. According to the government, while Mr. Stutzman "concedes that the Secretary of the Army retains the delegated authority from the President to remove any officer from a promotion scroll as authorized by statute," he relies on a version of Army Reg. 135-155, which was not yet in effect when he was removed from the promotion scrolls in 2018, 2019, and 2021. *Id.* at 32. The government explains that "[a]lthough Second Lieutenants in the Army are not required to go before a promotion board to be promoted, their promotion to First Lieutenant is not automatic." *Id.* Further, the government contends such decisions are nonjusticiable because "[t]he Army has wide discretion to decide whether to withhold or remove an officer from promotion[.]" *Id.* at 33.

Under federal law, "[t]he President may remove the name of any officer [in the Army reserves] from a promotion list at any time before the date on which the officer is promoted." 10 U.S.C. § 14310(a). On September 28, 2004, the President delegated this authority to the Secretary of Defense in Executive Order 13358. [ECF 13-1] at 45-46. On March 20, 2006, the Secretary of Defense further delegated this authority to the Secretaries of the Army, Navy, and Air Force. *Id.* at 47 ("The Secretaries of the Military Departments are hereby delegated the authority delegated to me by Executive Order 13358 . . . to remove the name of any officer on the Reserve Active-Status List from a promotion list to a grade below 0-7."). In the instant case, the Secretary of the Army removed Mr. Stutzman from the first lieutenant promotion scrolls on three occasions. AR 1419 (Jan. 29, 2018, Sec. Esper Mem.); AR 1453 (July 26, 2019, Acting

Sec. McCarthy Mem.); AR 1481 (July 16, 2021, Sec. Wormuth Mem.). Each time, the Secretary explicitly did so pursuant to his authority under 10 U.S.C. § 14310 and Executive Order 13358. AR 1419, 1453, 1481. Due to the discretionary nature of the President's authority to promote individuals within the military, and—by delegation—the discretionary nature of the Secretary of the Army's authority to promote individuals within the Army, the Court cannot review the Secretary of the Army's three decisions to remove Mr. Stutzman from the promotion scrolls. *See Dysart v. United States*, 369 F.3d 1303, 1317 (Fed. Cir. 2004) ("The President's decision not to appoint [a military officer] is a discretionary act that cannot be reviewed by a court.") (citation omitted); *accord Lindsay*, 295 F.3d at 1257 ("Because 'decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments,' *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), the substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review. *Voge*, 844 F.2d at 780."); *Pinto v. United States*, No. 19-1791, 2022 WL 1764682, at *4 (Fed. Cl. May 31, 2022) ("Under Federal Circuit precedent, the merits of military promotion decisions simply are not justiciable.") (citations omitted), *aff'd*, No. 22-2093, 2023 WL 2132811 (Fed. Cir. Feb. 21, 2023); *see also USP Holdings, Inc. v. United States*, 36 F.4th 1359, 1369 n.7 (Fed. Cir. 2022) ("The President's actions are not reviewable under the APA because the President is not an agency." (internal quotation marks omitted) (quoting *Dalton v. Specter*, 511 U.S. 462, 470 (1994))). Therefore, the Court grants the government's motion to dismiss this claim.[5]

### D. The Army's Decision to Retire Mr. Stutzman

Mr. Stutzman contends that he "remained a second lieutenant for . . . 4 years, 10 months and 21 days longer than the statutory maximum time in grade as a Second Lieutenant (10 U.S.C. § 14304(a)(1))," [ECF 10] at 4, and that the government relied on the incorrect statute when it retired him,[6] *id.* at 5. The government argues that Mr. Stutzman's retirement was mandatory based on the length of time he had served as a Second Lieutenant without a promotion. [ECF 13] at 35. According to the government:

> As reflected in the Army's amended order, Mr. Stutzman was

---

[5] Mr. Stutzman argues that, while the Secretary relied on paragraph 3-18 of Army Reg. 135-155 for the authority to remove him from the promotion list, that paragraph "relates to the expiration of a voluntary delay period," and, therefore, does not provide "authority for the Secretaries to remove [him] from a promotion scroll[,]" [ECF 10] at 29. Mr. Stutzman cites the version of Army Reg. 135-155 paragraph 3-18 dated December 13, 2022, to support his argument. *Id.* at 28-29. However, the version in effect at the time of the decisions by the Secretaries to remove him from the promotion scrolls in 2018, 2019, and 2021, was the July 13, 2004, version, which does authorize the removal of an officer's name from a promotion list. *See* [ECF 13-1] at 8-10.

[6] According to Mr. Stutzman, his "claims also arise from Defendant's reliance on the incorrect statute (10 U.S.C. § 1202) [] to forcibly and illegally retire him as if he were medically unfit." [ECF 10] at 5. Specifically, Mr. Stutzman contends that the government "improperly 'coded' [his] retirement with an Assignment Loss Reason of 'NP' (Academic Failure) and Separation Program Designator of 'SGB' (non-selection for promotion)." *Id.* at 8 n.1. The Army concedes that Mr. Stutzman was initially retired for being medically unfit but notes that it corrected this error in Mr. Stutzman's amended retirement order. [ECF 13] at 35. *Contrast* AR 1579 (initial retirement order dated July 5, 2023, which identifies the "Statutory Authority" for Mr. Stutzman's retirement as "01202" or 10 U.S.C. § 1202) *with* AR 1578 (amended retirement order dated August 9, 2023, which does not reference § 1202).

> permanently assigned to the Retired Reserve, effective April 14, 2023 for the reason, "Retirement – Mandatory" with the Separation Designator Code "SGB." AR 1578. An "SGB" designator code "signifies mandatory retirement for length of service when a commissioned or warrant officer was not selected for permanent promotion or physical disability."

*Id.* Further, the government contends that the merits of its decision to permanently retire him to the Retired Reserve are nonjusticiable and that "Mr. Stutzman fails to identify any Army regulation or required procedure that the Army failed to follow[.]" *Id.* In addition, the government contends that Mr. Stutzman's "illegal retirement" claim is nonjusticiable because the Court lacks the "authority to reinstate Mr. Stutzman to the active Army Reserve and assign him to a billet commensurate with his rank as he seeks." *Id.* at 36.

At oral argument, Mr. Stutzman conceded that, even if he was retained in the Army longer than permitted under Army regulations, there was no relief available to him at this point. Oral Arg. at 11:43:40 - 11:43:48. Accordingly, the Court finds that Mr. Stutzman's claim regarding the Army's decision to retire him is nonjusticiable and that he fails to state a claim for relief. The Court does not have the authority to grant Mr. Stutzman a retroactive promotion. *See Miller v. United States*, 119 Fed. Cl. 717, 730 (2015) (finding that the plaintiff's request for a retroactive promotion "fails to state a claim upon which relief can be granted," and therefore dismissing the request as nonjusticiable under RCFC 12(b)(6)). Additionally, as a reservist, Mr. Stutzman is not entitled to back pay for unperformed duty. *See Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir. 1999) ("The consequence of th[e] difference in pay entitlement between full-time active duty personnel and those serving part-time reserve duty is that a member who is serving in part-time reserve duty in a pay billet, or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or for unperformed training duty.") (citations omitted). Therefore, the Court grants the government's motion to dismiss this claim.

### E. The Army's Handling of Five Administrative Flags

Mr. Stutzman claims that the Army violated several paragraphs of Army Reg. 600-8-2, when it failed to remove five administrative flags from his personnel records. [ECF 1] ¶ 61; [ECF 10] at 8 ("Whether [the Army's] failure to remove adverse administrative flags in a timely manner were, in and of themselves, arbitrary and capricious decisions, unsupported by substantial evidence, and/or contrary to [] applicable statutes and regulations, thereby prejudicing [Mr. Stutzman's] promotion eligibility and career progression."). Specifically, Mr. Stutzman complains that the Army failed to remove (1) one "A" flag on April 11, 201[4],[7] "'the date the appropriate authority direct[ed] the filing of the signed [GOMOR],'" in violation of paragraph 2-9b(4), [ECF 1] ¶ 61(a); (2) one "B" flag in June 2017, the date the Commander of the 3d Medical Command "'approve[d] retention of the Soldier,'" in violation of paragraph 2-9b(5), *id.* ¶ 61(i); (3) one "F" flag on January 29, 2018, "the date the Secretary of the Army removed [him] from the Promotion Scroll," in violation of paragraph 2-9b(6), *id.* ¶ 61(j); (4) one "F" flag on July 29,

[7] The complaint incorrectly identifies the year as 2013.

2019, "the date the Secretary of the Army removed [him] from the Promotion Scroll," in violation of paragraph 2-9b(6), *id.* ¶ 61(n); and (5) one "F" flag on July 16, 2021, "the date the Secretary of the Army removed [him] from the Promotion Scroll," in violation of paragraph 2-9b(6), *id.* ¶ 61(t). According to Mr. Stutzman, because the Army failed to remove these administrative flags, it also violated Army Reg. 135-155 on twenty-two occasions by failing to include him on quarterly promotion scrolls. *Id.* ¶ 61.[8] Mr. Stutzman contends that the presence of these flags in his personnel record was "not harmless error," and that "[t]he presence of a flag not properly removed, causes unnecessary mistakes, delays and other administrative errors[.]" [ECF 14] at 19.

The government argues that "[t]he administrative record does not support Mr. Stutzman's claim that any flag placed in his military personnel record prevented him from being considered for promotion to First Lieutenant." [ECF 13] at 37. The government asserts that "[Mr. Stutzman] was considered for promotion to First Lieutenant three times . . . [that] [e]ach time, his promotion was flagged because of derogatory information and screened by a Promotion Review Board . . . [and that] each time the Secretary of the Army [appropriately] removed him from the promotion scroll." *Id.* According to the government, "Mr. Stutzman merely disagrees with the result but cannot point to any prejudicial error." *Id.* The government also contends that because Mr. Stutzman failed to argue before the ABCMR that he was prejudiced by the government's failure to remove these flags from his personnel record, he waived the right to do so now. *Id.* at 36-39.

"Congress has given the military secretaries the power to correct military records using civilian Corrections Boards." *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003) (citing 10 U.S.C. § 1552(a)(1) (2000)). Under the corrections board statute, "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). An aggrieved service member, however, need not exhaust his administrative remedies by appealing to a military review board. *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) ("[T]he correction boards have been regarded as a permissive administrative remedy and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge.") (citations omitted); *accord Klingenschmitt v. United States*, 119 Fed. Cl. 163, 182 (2014) ("It is well established that military correction boards provide a permissive administrative remedy for wrongful discharge and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge.") (citations and internal quotation marks omitted), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015). Rather, "[a]n officer seeking correction of military records may either apply as an initial matter to a Corrections Board, or file suit under the Tucker

[8] In the complaint, Mr. Stutzman claims that he "was eligible for a fully qualified promotion to First Lieutenant 18 months after commissioning, on or before November 2014, and every fiscal quarter – more than 32 fiscal quarters, thereafter until the date [he] was retired." [ECF 1] ¶ 18. Although this statement suggests that Mr. Stutzman also believes that he was not considered for promotion on thirty-two occasions, the Court only focuses on the twenty-two occasions Mr. Stutzman expressly identifies in paragraph 61. *See, e.g. id.* ¶ 61(b) ("Defendant and Defendant's officers, employees, and agents failed to consider Plaintiff for promotion on October 1, 2014 and inclusion on the Fiscal Year 2015 ('1QFY15') Promotion Scroll due to Defendant's failure to remove one or more adverse personnel flags and contrary to Army Reg[.] 135-155.").

Act in the Court of Federal Claims." *Richey*, 322 F.3d at 1323 (citing *Heisig*, 719 F.2d at 1155). If, however, the service member first seeks relief from a corrections board, he must raise all issues or he risks being precluded from raising them before this Court on the grounds of waiver. *Spehr v. United States*, 51 Fed. Cl. 69, 85 (2001) (citations omitted) ("A claimant's failure to raise an issue during [A]BCMR proceedings constitutes a waiver of the issue in this court."), *aff'd*, 49 F. App'x 303 (Fed. Cir. 2002); *accord Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) ("[A] plaintiff may waive an argument with respect to [an] issue by not asserting it before [a military corrections board]."); *Labonte v. United States*, No. 18-1784, 2024 WL 4639258, at *8 (Fed. Cl. Nov. 4, 2024) (noting that a court cannot assess whether a corrections board's decision was arbitrary or capricious if the board "was not given an opportunity to consider and determine an argument subsequently presented to a court"). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

Here, Mr. Stutzman initially sought relief from the ABCMR. Therefore, the first issue before the Court is whether he raised his administrative flag claim in his application to the corrections board. Upon review of the record, the Court finds that Mr. Stutzman did raise this claim. In his request for relief to the ABCMR, he stated: "Lieutenant Stutzman has been improperly flagged for adverse actions for most of the past eight years because the Active Army and the U.S. Army Reserve could not and still cannot understand its own regulations and personnel systems." AR 22 (emphasis omitted). Mr. Stutzman further stated that "had all of the relevant flags . . . been removed from his record in a timely manner, [he] would have been eligible for promotion to 1LT in November 2014," AR 37-38, and that "[a]lternatively, had all of the flags been removed in a timely manner, [he] should have been promoted to First Lieutenant 30 months after reaching maximum time-in-grade (commissioned in May 2013) or November 2015," AR 38. In conclusion, he argued that "[t]he Army's processing of [his] administrative actions [has] been repeatedly mishandled," despite "repeated requests of his lower chain of command to remove a flag that Army HRC allowed . . . to remain on [his] records[.]" *Id.* Although the ABCMR did not discuss the merits of Mr. Stutzman's administrative flag claim in its decision, it acknowledged that such claim was before it. Summarizing Mr. Stutzman's arguments in the "Facts" section of its decision, the ABCMR stated the following:

> a. This case involves six contradictory Headquarters, Department of the Army, level decisions over a span of 8 years. Headquarters, Department of the Army, level decisions include an administrative separation board (retaining him) and three PRBs (with four decisions – three to remove, one to promote). The applicant has largely been ignored for the last 8 years because the bureaucracy of figuring out his situations was deemed "just too hard." He has been flagged for 8 years without guidance, promotion, reward, or transfer. He has consistently earned Above Center of Mass ratings while filling and excelling in CPT and MAJ billets, including holding company command.

* * *

> k. This is [a] case of bureaucratic apathy. The HRC and USAR Command abrogated their responsibilities to oversee the applicant's career despite his repeated requests to his lower chain of command to remove a flag that HRC allowed to remain in his record for at least 3 years after filing the GOMOR. HRC sent him to three PRBs, two more than authorized by law. The USAR Command has continually allowed him to languish in the USAR, knowing there was an 8-year 2LT sitting on their books with years-old flags. Not once did anyone at the USAR Command attempt to resolve the issue despite his repeated requests to his lower chain of command.

AR 6, 7. This evidence demonstrates that Mr. Stutzman's administrative flag claim was before the ABCMR and is therefore now properly before the Court.[9]

The next issue before the Court is whether the Army's handling of these five administrative flags prejudiced Mr. Stutzman. "[S]trict compliance with procedural requirements is not required where the error is deemed harmless." *Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) (citations omitted). "As such, a plaintiff must show the existence of an administrative error and, further, must 'at least . . . set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action.'" *Driscoll v. United States*, 158 Fed. Cl. 399, 412 (alteration in original) (quoting *Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003)), *supplemented on denial of recons.,* No. 19-1640, 2022 WL 3330432 (Fed. Cl. Aug. 11, 2022). "If the plaintiff makes such a showing, the 'end-burden of persuasion falls to the Government to show harmlessness—that, despite the plaintiff's prima facie case, there was no substantial nexus or connection.'" *Id.* (quoting *Christian*, 337 F.3d at 1343).

---

[9] Although not contested by the government, the Court notes that Mr. Stutzman's administrative flag claim under Army Reg. 600-8-2 is justiciable. Paragraph 2-9b(4), "Memorandum of admonishment, censure, or reprimand not administered as nonjudicial punishment," provides: "Remove the Flag on the date the appropriate authority directs the filing of the signed memorandum [] or on the date the memorandum is rescinded without filing." Army Reg. 600-8-2, ¶ 2-9b(4) (2012). Paragraph 2-9b(5), "Involuntary separation or discharge," provides: "Remove the Flag on the date HQDA or the appropriate commander approves retention of the Soldier, or on the date the Soldier is reassigned to the transition point (Active Component) or discharge orders are published (Reserve Component)." *Id.*, ¶ 2-9b(5) (emphasis omitted). Lastly, paragraph 2-9b(6), "Pending removal or consideration for removal (field or Headquarters department of the Army initiated) from a command, promotion, or school selection list" provides instructions for flag removal under various scenarios. *Id.*, ¶ 2-9b(6). Under each of these paragraphs, flag removal is mandatory once the triggering event occurs. In other words, under the Army's own regulations, the removal of a flag from a soldier's personnel record in prescribed circumstances is not discretionary. Therefore, Mr. Stutzman's administrative flag claim is properly before this Court. *See Lindsay*, 295 F.3d at 1257-58 ("A claim of procedural violations may present a justiciable controversy because the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations.") (internal quotation marks omitted); *Guardado v. United States*, No. 22-33, 2023 WL 5426590, at *9 (Fed. Cl. Aug. 23, 2023) (holding that the plaintiff's claim is justiciable because it "flows directly from an alleged breach of a non-discretionary regulation which provides measurable standards against which to judge the Army's actions").

Here, based on the existing record, the Court is unable to determine whether the Army's handling of the administrative flags at issue prevented Mr. Stutzman from being considered for promotion. Army Reg. 600-8-2 establishes the "Army policy for the suspension of favorable personnel actions (Flag) function of the military personnel system[,]" and provides "policies regarding the initiation, transfer, removal, and management of Flags." Army Reg. 600-8-2, ¶ 1-1. "The purpose of a Flag is to prevent and/or preclude . . . [e]xecution of favorable actions to a Soldier[.]" *Id.*, ¶ 2-1a(1). "Flags are not to be used for punishment or restriction, but only as an administrative tool." *Id.*, ¶ 2-1b. Further, "[a] properly imposed Flag prohibits . . . [p]romotions[.]" *Id.*, ¶ 3-1d. "The Flag is not the final disposition[,] [but instead] is emplaced during some type of disciplinary or administrative action until that action is concluded." *Id.*, ¶ 2-1c. In general, "[t]he Flag should be initiated within 3 working days after identification of the Soldier's unfavorable status and removed within 3 working days after determination of the final disposition." *Id.*, ¶ 2-1d. "All flagged Soldiers will be provided [notice] when the Flag is initiated [and] when a Flag is removed." *Id.*, ¶ 2-6. Lastly, "[r]ules for removing a Flag" vary based on how it was initiated. *Id.*, ¶ 2-9b.

Mr. Stutzman received his commission as a second lieutenant in the United States Army Reserve Medical Corps Service on May 24, 2013. AR 223, 547, 1135. Under paragraph 2-1 of Army Reg. 135-155, "[a]n officer in the grade second lieutenant (2LT) . . . will be considered for promotion without review by a selection board." Army Reg. 135-155, ¶ 2-1. Further, second lieutenants must have served a minimum of two years at that rank and must have completed the resident officer basic course. *Id.*, Tables 2-1, 2-2. Mr. Stutzman completed his basic course on October 31, 2014. [ECF 1] ¶ 17. He therefore satisfied his time in grade and education requirements and became eligible for promotion on May 24, 2015. Accordingly, Mr. Stutzman's claim that he was prejudiced by the Army's failure to properly remove the administrative flags from his record in accordance with its regulations and consider him for promotion prior to May 24, 2015, lacks merit because he was not yet eligible for promotion consideration under Army Reg. 135-155. Thus, the Court finds that on three occasions, the Army's alleged failure to remove the flags was not prejudicial to Mr. Stutzman.[10] As to Mr. Stutzman's claim that the Army failed to consider him for promotion on nineteen other occasions due to improper flags in his record, while the administrative record indicates Mr. Stutzman was eligible for promotion, it is unclear whether an administrative flag in his personnel record precluded promotion consideration.[11] Furthermore, in its decision denying relief to Mr. Stutzman, the ABCMR did not address his claim that he was not considered for promotion due to improper flags in his record. Accordingly, the Court will remand the case to the ABCMR to consider Mr. Stutzman's claim in

---

[10] *See* [ECF 1] ¶ 61(b) (1QFY15 scroll on 10/1/2014), *id.* ¶ 61(c) (2QFY15 scroll on 1/1/2015), and *id.* ¶ 61(d) ([3]QFY15 scroll on 4/1/2015).

[11] *See* [ECF 1] ¶ 61(e) ([4]QFY15 scroll on 7/1/2015); *id.* ¶ 61(f) ([2]QFY16 scroll on 1/1/2016); *id.* ¶ 61(g) ([3]QFY16 scroll on 4/1/2016); *id.* ¶ 61(h) (4QFY16 scroll on 7/1/2016); *id.* ¶ 61(k) (3QFY18 scroll on 4/1/2018); *id.* ¶ 61(l) (4QFY18 scroll on 7/1/2018); *id.* ¶ 61(m) (1QFY19 scroll on 10/1/2018); *id.* ¶ 61(o) (2QFY20 scroll on 1/1/2020); *id.* ¶ 61(p) (3QFY20 scroll on 4/1/2020); *id.* ¶ 61(q) (4QFY20 scroll on 7/1/2020); *id.* ¶ 61(r) (1QFY21 scroll on 10/1/2020); *id.* ¶ 61(s) (2QFY21 scroll on 1/1/2021); *id.* ¶ 61(u) (1QFY22 scroll on 10/1/2021); *id.* ¶ 61(v) (2QFY22 scroll on 1/1/2022); *id.* ¶ 61(w) (3QFY22 scroll on 4/1/2022); *id.* ¶ 61(x) (4QFY22 scroll on 7/1/2022); *id.* ¶ 61(y) (1QFY23 scroll on 10/1/2022); *id.* ¶ 61(z) (2QFY23 scroll on 1/1/2023); *id.* ¶ 61(aa) (3QFY23 scroll on 4/1/2023).

the first instance. *See Metz*, 466 F.3d at 998 ("[I]f a plaintiff has asserted an argument . . . , but the Board has not adequately addressed it, . . . [the court] may order a remand to the Board so that the Board can address the plaintiff's challenge in the first instance[.]"); *Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006) ("While the court is not prepared to conclude that the ABCMR decision was arbitrary or capricious on the present record, the decision cannot be affirmed. . . . The ABCMR failed to adequately consider the important issues that needed to be analyzed before rendering a decision.").[12]

### F. The Sufficiency of the Administrative Record

Mr. Stutzman argues that the government "failed to provide the complete administrative record[.]" [ECF 10] at 32. Specifically, Mr. Stutzman argues that the government did not provide the following:

> (1) a log of the system entries in Integrated Personnel and Pay System – Army ("IPPS-A") identifying when adverse administrative flags were initiated and removed; (2) copies of the matters i[n] rebuttal and consideration Plaintiff provided to each of the FYs 2015, 2018, and 2021 PRBs, and the documents reviewed and considered by PRB; (3) the documents provided to the Board by Defendant; (4) the recommendations from the members of the PRBs and HDQA principal officials that each of the three Secretaries of the Army considered in their decisions to remove Plaintiff from three promotion scrolls; and, (5) any records from the U.S. Army Reserve Command relating the June 2017 ADSEP board.

*Id.* at 34. Mr. Stutzman moves "to supplement [the administrative record] with [] extra-record evidence." *Id.* at 33.[13] The government contends that the administrative record "includes all the

[12] The government argues that "there was no error with the flags" and that "Mr. Stutzman was properly flagged and was not eligible for promotion while the Secretary of the Army considered his removal from the promotion list." [ECF 13] at 38. While the government is correct that, under paragraph 2-2e of Army Reg. 600-8-2, an "F" flag should have been placed in Mr. Stutzman's record while the Secretary of the Army considered his removal from the promotion list on three separate occasions, under paragraph 2-9b(6)(c), the flag would have been removed on the date that the Secretary of the Army decided to remove him from the pertinent promotion list. Thus, the government's argument does not account for the periods before and after the proper placement and removal of such "F" flags, during which Mr. Stutzman was otherwise eligible for promotion and during which he should not have had a flag in his record that precluded promotion consideration. *See* 10 U.S.C. § 14310(a) ("The President may remove the name of any officer from a promotion list at any time before the date on which the officer is promoted."); 10 U.S.C. § 14310(e) ("An officer whose name is removed from a list under subsection (a) . . . continues to be eligible for consideration for promotion."). Furthermore, like the "A" flag and the "B" flag that Mr. Stutzman claims were not removed from his record in accordance with paragraph 2-9, the record does not show whether the "F" flags were properly removed.

[13] Mr. Stutzman broadly challenges the evidentiary standards used by the military in administrative proceedings. *See, e.g.*, [ECF 10] at 7 ("Whether Defendant should, *in fact*, be afforded 'substantial deference in the governance of its affairs' when Defendant need only support its decision with *credible evidence* . . . and Plaintiff is required to provide substantial clear and convincing evidence[.]"); *id.* at 29 ("The disparate [evidentiary] standards [used in

documents Mr. Stutzman submitted to [the ABCMR]," [ECF 13] at 43, but that "[t]o the extent [that additional documents Mr. Stutzman attached to his MJAR] provide meaningful judicial review, the Government does not object to consideration of those materials," *id.* at 44. Further, the government argues that "[a]ny additional documents Mr. Stutzman seeks to include, *i.e.*, the 'log of the system of entries' that identify when flags were initiated and removed [] are immaterial to this case . . . and therefore should be denied." *Id.*

"As a general rule, in determining whether an agency's actions are arbitrary or irrational, the 'focal point for judicial review . . . should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Knowledge Connections, Inc. v. United States*, 79 Fed. Cl. 750, 759 (2007) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985)). Thus, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, [], to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co.*, 470 U.S. at 743-44. The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to "convert the 'arbitrary and capricious' standard into effectively *de novo* review." *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000) (citations omitted), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005). Accordingly, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting *Murakami*, 46 Fed. Cl. at 735). Further, whereas it is always appropriate to complete the administrative record with material that "served as a basis for the agency's [] decision," *Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 158 (2010), a "party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient," *Price Gordon Servs. v. United States*, 139 Fed. Cl. 27, 50 (2018) (citation omitted). "In military pay cases before this court, [however,] an alternative to supplementation of the administrative record is to remand the case to the corrections board whose decision is being reviewed, so that the board may render a decision on a complete record." *Okuda v. United States*, 160 Fed. Cl. 549, 557 (2022) (internal quotation marks omitted) (quoting *Miller v. United States*, 119 Fed. Cl. 717, 727 (2015) (citing cases)). "Indeed, a court may, only in exceedingly rare circumstances, consider in the first instance evidence not presented to the corrections board; such evidence may be new or newly discovered or material the military pay claimant failed or elected not to submit as part of their application for administrative relief." *Okuda*, 160 Fed. Cl. at 557 (citing *Walls*, 582 F.3d at 1367).

Here, given the Court's decision to remand the case to the ABCMR to address Mr. Stutzman's claim that the Army improperly maintained flags in his personnel record that

---

military personnel decision] deny Mr. Stutzman fundamental due process, and justice requires they be changed."); *id.* at 30 (noting that whereas the government need only identify "credible evidence" to administratively punish a soldier, a soldier—who lacks complete access to his records—must proffer "substantial clear and convincing evidence" in support of a petition challenging such punishment). However, Mr. Stutzman does not develop or otherwise support this argument. Instead, he appears to raise the issue in the context of his request to supplement the administrative record, arguing that it is difficult for him to meet the requisite standard given the lack of record evidence and his inability to access his personnel records. *Id.* at 31-32. Therefore, the Court addresses Mr. Stutzman's motion to supplement the administrative record but does not address his challenge to the applicable evidentiary standards. *See Seventh Dimension, LLC v. United States*, 161 Fed. Cl. 110, 129 (2022) (waiving argument that was not "meaningfully advanced").

precluded him from being considered for promotion on nineteen occasions, the Court will deny Mr. Stutzman's motion to supplement the administrative record. While a "remand is not required when the material proffered to supplement the administrative record is not probative," *Miller*, 119 Fed. Cl. at 727, in the instant case, it appears that—at a minimum—any information about the existence of administrative flags in Mr. Stutzman's personnel record would certainly be probative of whether the Army violated its own regulations governing the placement and removal of flags and, if so, whether such violation improperly precluded Mr. Stutzman from promotion consideration. A remand will allow the ABCMR to both address the inadequacy of the existing administrative record and consider Mr. Stutzman's flag claim in the first instance. *See Lancaster v. United States*, No. 22-267, 2022 WL 3100430, at *3-4 (Fed. Cl. Aug. 4, 2022) (granting voluntary remand to allow for record development and consideration of the substantive issues for the first time). Regarding Mr. Stutzman's motion to supplement the record with materials unrelated to the Army's handling of the administrative flags in his personnel record, such materials are not probative of his remaining claim and, thus, are unnecessary for effective judicial review.[14]

## IV. CONCLUSION

For the reasons set forth above, Mr. Stutzman's MJAR, [ECF 10], including his motion to supplement the administrative record, is **DENIED**. Further, the government's combined motion to dismiss and cross-MJAR, [ECF 13], is **GRANTED-IN-PART** and **DENIED-IN-PART**. The government's motion to dismiss is **GRANTED** as to Mr. Stutzman's claims challenging the Army's decision to impose the GOMOR, the DASEB's decision not to remove the GOMOR, the Army's decision to remove him from the promotion scrolls, and the Army's decision to retire him, and **DENIED** as to Mr. Stutzman's claim that the Army failed to remove administrative flags from his personnel records. The government's cross-MJAR is **DENIED**.

Additionally, the matter is **REMANDED** to the ABCMR to consider Mr. Stutzman's claim that improper flags in his record prevented him from being considered for promotion when he was otherwise eligible. The Clerk is directed to serve a certified copy of this Opinion and Order on the Army Board for Correction of Military Records at the following address:

Joseph Lister
Director
Army Board for Correction of Military Records
251 18th Street South, Suite 385

[14] Mr. Stutzman also argues that under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Court must "abandon its near absolute deference to the [Army's] interpretation of statute in administrative decisions . . . [and] now determine [for itself] whether [the Army] acted in accordance with each of the statutes and regulations governing [its] administrative actions[.]" [ECF 10] at 21. In *Loper Bright*, the Supreme Court held that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters.*, 603 U.S. at 413. Here, however, it is unclear what law Mr. Stutzman claims is ambiguous. In any event, given the Court's decision to remand the case to the ABCMR on the issue of the Army's handling of administrative flags in Mr. Stutzman's personnel file, the Court need not address the application of *Loper Bright* at this point. *See White v. United States*, 175 Fed. Cl. 146, 164 (2025) (deferring addressing the implication of *Loper Bright* until the completion of remand proceedings).

Arlington, VA 22202-3531

Remand proceedings shall be completed within 120 days of the issuance of this Opinion and Order. The parties **SHALL FILE** a joint status report **on or before December 8, 2026**, advising the Court of the status of the remand proceedings. The Court will retain jurisdiction over the case during the remand period and **STAYS** the case during such time. Further, pursuant to RCFC 52.2(e), the parties **SHALL FILE** notice with the Court within thirty days of the ABCMR's completion of its actions on remand, stating whether such actions afford a satisfactory basis for the disposition of the case or whether the parties require further proceedings before the Court.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
Thompson M. Dietz, Judge